THE NORFOLK AND NEW BRUNSWICK· HOSIERY COM-
PANY, PLAINTIFF IN ERROR, v. ANNA M. ARNOLD,
DEFENDANT IN ERROR.

Argued December 8, 1899—Decided March 5, 1900.

The agreement sued on contained two provisions: *First.* That patented machines were to be manufactured and delivered by the defendant, the patentee, to the plaintiff, the plaintiff to advance to defendant the cost of making them; the plaintiff to have exclusive use of them for six-teen years (the life of the patent), on payment to defendant of royalties guaranteed to average $1,000 per month per annum for the whole period, "the machines to be returned by plaintiff to defendant at the termination of the contract on her repayment of their original cost."

*Second.* If defendant became unable to make or furnish the machines desired, then plaintiff was to be at liberty to make and use them, and at the termination of the contract they were to be delivered to defendant if she elected to purchase them. *Held*, that by the terms of the first provision the obligation was mutual, the plaintiff was bound to return and the defendant to accept and pay for the machines manufactured and furnished by defendant. The maxim *"Expressio unius exclusio alterius"* applies.

On error to the Supreme Court. For opinion of the Supreme Court, see 34 *Vroom* 379.

For the plaintiff in error, *Willard P. Voorhees.*

For the defendant in error, *Elwood C. Harris.*

The opinion of the court was delivered by

VAN SYCKEL, J. This is a demurrer to a declaration. The action is founded upon a written agreement between these parties, executed in April, 1882, a copy of which is annexed to and made part of the declaration, by which Mrs. Arnold granted to the plaintiff the exclusive use for sixteen years of certain patents therein specified, for which the plaintiff stipulated that it would pay her certain royalties. The plaintiff guaranteed that said royalties should amount to the average sum of $1,000 per month from and after the 1st day of January, 1883, the royalties prior to that date to be $500 per month.

The fourth article of said agreement is as follows :

"Article IV. The party of the first part hereby covenants and agrees to furnish the party of the second part at a reasonable price, the same to be paid for by said party of the second part, as many Anchor sewing machines and appurtenances as the party of the second part shall desire, the same to be used only by the party of the second part or its licensees, and the same to be returned, on the termination of this contract, to the party of the first part on her repayment to the party of the second part the original cost of said Anchor ewing machines and appurtenances so returned. In case of

the death or inability of the party of the first part to manufacture or furnish such machines and appurtenances, it is hereby agreed that the party of the second part may manufacture, or cause to be manufactured, said machines and appurtenances, to be used only by the said party of the second part or its licensees and during the continuance of this agreement, and the same to be turned over to the party of the first part or her representatives or her assigns on the termination of this agreement, at cost price, on her or their election to so purchase them."

Upon the construction of this provision in the contract this controversy has arisen.

The declaration sets forth that Mrs. Arnold furnished the plaintiff one hundred and five machines at a cost of $16,500, which the plaintiff advanced to her, and that at the termination of the contract the plaintiff offered to return to her all of said machines, and thereupon demanded payment by her of the said sum of $16,500, the original cost of said machines.

The alleged breach of the contract is her refusal to pay the said sum of $16,500 for which this suit is instituted, her insistment being that it was left to her option whether she was to accept the return of the said machines at the expiration of the agreement.

The situation of these parties with reference to this agreement was this:

The plaintiff in this contract agreed to pay to Mrs. Arnold, as a royalty for the use of her patented machines, the sum of fifty cents per dozen on all shirts and drawers upon which the machines should be used, with the guarantee that such royalties would average $1,000 per month during each twelve months of the term for which the agreement ran. These royalties, under the agreement, could not be less than $192,-000 for the sixteen years, and they would be correspondingly increased by increasing the number of machines to be used. It was to her advantage to furnish as many machines as the plaintiff desired to operate.

She protected herself against an undue demand upon her,

which she might not be able to supply, by the provision in the second member of article 4.

Assuming that both parties had confidence in the value of the patent, as they must have had when they bargained, it was a good business-like act on the part of Mrs. Arnold to say to the plaintiff: "If you will furnish me the money, without interest, for sixteen years, to construct these machines, I will manufacture them, and permit you to use them during that time for the guaranteed royalties, and at the expiration of that time I will take them back and pay you the principal sum of the money so advanced to me, but the machines you may manufacture for yourself I shall have the election to take or not at the cost price."

It was a reasonable and prudent distinction, as she had no control over the cost of machines not furnished by her.

Such an arrangement, in my judgment, was not only beneficial to Mrs. Arnold, but it is the true interpretation of the agreement contained in article 4. . The language used is, "that at the termination of the contract the machines were to be returned to her on her repayment of their original cost to the plaintiff."

This imposed a mutual obligation on the one party to return and on the other to accept and pay for them. The return could not be enforced until payment was made or offered, but the obligation to return and the duty to pay are present in the terms of this undertaking.

The patent expired with the termination of the contract, and then anyone could manufacture and use such machines without the consent of the patentees. It cannot therefore be reasonably conceived that Mrs. Arnold desired to reserve in this contract the option to take back machines, after they had been used sixteen years, by paying the full amount that it cost to produce them. That clause was inserted manifestly for the benefit of the plaintiff, but being unwilling to accede to the same terms in respect to machines not made by her, she reserved the right of election as to them.

The parties had in mind the difference between an option

to purchase and an absolute agreement of sale and purchase, and in the latter member of article 4 they used appropriate language to create an option.    In the prior member entirely different language was used, in regard to which the utmost that can be said in behalf of Mrs. Arnold is that, standing by itself, it is debatable whether it carries an absolute engagement on her part.    But the maxim for interpretation so universally applied, "*Expressio unius exclusio alterius*," must control the construction of this contract and lead to the conclusion that the understanding and agreement of the parties was that an obligation rested upon Mrs. Arnold to accept and pay for the machines.

The express reservation of an election in the latter clause excludes the inference of such reservation in the former.    If an option was to obtain in both instances, the parties knew how to express it, and would have used language appropriate to secure it.    The return could not be demanded until payment was made or tendered, but the obligation to return and the duty to pay are present in the terms of the undertaking.

The judgment below should be reversed, and the demurrer overruled.

*For affirmance*—BOGERT, NIXON.    2.

*For reversal*—DIXON, VAN SYCKEL, GUMMERE, LUDLOW, HENDRICKSON, ADAMS, VREDENBURGH.    7.